NOT DESIGNATED FOR PUBLICATION

No. 125,285

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CLINTON D. DECAIRE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Oral argument held November 15, 2023. Opinion filed March 1, 2024. Convictions affirmed, sentence vacated in part, and case remanded with directions.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., COBLE and PICKERING, JJ.

PER CURIAM:  Clinton D. Decaire appeals his jury convictions of the rape of two minor victims and aggravated indecent liberties with one of the two children. The district court sentenced him to life without the possibility of parole and a restitution order of $2,330. On appeal, Decaire raises multiple arguments, including:  (1) the district court erred by excluding rebuttal witness testimony; (2) the prosecutor committed reversible error in closing arguments; (3) the State failed to present sufficient evidence to support Decaire's rape convictions of one victim; (4) cumulative error denied him a fair trial; and

1

(5) the district court abused its discretion by issuing a restitution order not supported by substantial competent evidence. For the reasons discussed below, we affirm Decaire's convictions but vacate the district court's restitution order and remand for an evidentiary hearing on the restitution award.

FACTUAL AND PROCEDURAL BACKGROUND

Decaire was charged with four counts of rape under K.S.A. 2018 Supp. 21-5503(a)(3), (b)(2), and two counts of aggravated indecent liberties with a child under K.S.A. 2018 Supp. 21-5506(b)(3)(A), (c)(3) for incidents involving a minor, Victim 1. He was also charged with two counts of rape under the same statute, and alternatively, two counts of aggravated criminal sodomy under K.S.A. 2018 Supp. 21-5504(b)(1), (c)(3) for incidents involving a second minor, Victim 2. The State brought the charges after Victim 1 and Victim 2 filed a police report.

More detail will be added to the opinion as it becomes necessary to the issues, but generally, from April 2018 until the spring of 2019, Decaire, who was also known as Chevy, his girlfriend, and the girlfriend's two children lived in his parent's home. Victim 1 was eight years old when she began living with Decaire. Victim 2, who was six years old and friends with Victim 1, lived on the same street as Decaire.

The two victims played together frequently. On Easter weekend in 2019, Decaire's parents invited Victim 2 to spend the night for the first time at the Decaire residence. Although Victim 2 did not immediately discuss anything about that night with her parents, a few weeks later, she told her father on the way to kindergarten that she had a gross dream, that Chevy stuck his finger in her butt and wiggled it. Later that night, Victim 2's mother talked to her about what Victim 2 had told her father. Victim 2 told her mother the same thing she told her father, and that her underwear was on, but Decaire's

2

hand was underneath it. Victim 2 said Decaire's hand went into her butt, as according to her mother that was what she called "[e]verything down there."

Victim 2's parents were in shock and contacted a friend who worked for the Department for Children and Families (DCF). They ultimately decided to wait until DCF opened after the long weekend to talk to someone at their facility. In the meantime, the parents kept Victim 2 away from Decaire's residence over the weekend. Then, on Monday morning, Victim 1 came to Victim 2's house crying and yelling that they had to move. Victim 2's mother took Victim 1 aside, alone, and asked her what was wrong. Victim 1 reported that Decaire did something so bad to her that she and her family would have to move. Victim 1 then hesitantly told the mother that every time she was alone with Decaire, he stuck his finger in her private parts and that when she goes to Decaire and her mom's bed when she is scared of a storm, he does it again. Both victims reported to Victim 2's mother that neither girl had told the other about what had happened to them. Victim 1 told Victim 2's mother that she had reported these incidents to her mother the previous night.

Victim 2's mother later spoke with Victim 1's mother, who told her that Victim 1 could not return to their house and asked if Victim 1 could stay with Victim 2's family until the mother found a new place to live. Victim 2's mother then decided to take further action by taking the girls to the police. At the police station, Victim 2's mother insisted the girls be kept separated. Victim 2's mother provided a written statement at the police station regarding what she heard and allowed Detective Keith Lunkenheimer to interview her daughter. Victim 2's mother saw Victim 1 being interviewed, but only after Victim 1's mother arrived at the police station. After Detective Lunkenheimer interviewed Victim 2, she told her mother that Decaire also touched her another time when they were sitting in his back patio area. She reported both incidents occurred when Victim 2 was six years old.

3

Victim 1 told Detective Lunkenheimer that Decaire touched and put his fingers inside her privates on four or more occasions when she was in her mother and Decaire's bed. This happened when she was seven or eight years old. Victim 1 also told Detective Lunkenheimer that Decaire placed his hands on her upper thighs the day before in the car while they were going to Walmart and again on the way back home.

Before the trial, the State moved to admit propensity evidence under K.S.A. 2022 Supp. 60-455(d), showing that Decaire pled guilty to three counts of rape as a juvenile and is a lifetime registered sexual offender. The district court granted the pretrial motion, and the evidence was admitted through a stipulation of the parties, which stated that Decaire pled guilty to three counts of raping a 13-year-old girl when he was 17 years old. The stipulated facts indicated that Decaire digitally penetrated the victim's vagina before putting his penis in her vagina every time he had sex with the victim, the girl was a runaway, and he remembered babysitting the victim when they were younger.

Both victims testified at trial, along with their mothers, and Detective Lunkenheimer. Decaire's father, Daniel Decaire, testified in his defense, along with a character witness, Tonya Rauh.

The jury convicted Decaire of all counts except for the two aggravated criminal sodomy charges. The district court sentenced Decaire to 8 terms of life imprisonment without the possibility of parole for 653 months, with 5 of the counts running consecutively.

Decaire timely appeals.

## THE DISTRICT COURT DID NOT ERR BY EXCLUDING DEFENSE WITNESS TESTIMONY

In Decaire's first argument on appeal, he contends the district court erred by excluding defense witness testimony rebutting the State's propensity evidence. At trial, he proffered the witness testimony of Rauh, who planned to testify regarding her observations of how Deciare interacted with her children and his own children to show he acted appropriately, and the children did not fear him. The district court excluded this line of Rauh's testimony on the grounds that it was inadmissible as a specific instance proving a good character trait under K.S.A. 60-447(a) and *State v. Price*, 275 Kan. 78, 93, 61 P.2d 676 (2003). The trial court disallowed Rauh's testimony regarding her own children and Decaire's children but permitted her to testify regarding her observations of Decaire around both victims.

Decaire contends this proffered rebuttal evidence was relevant and the district court erred by excluding it because it was both proper rebuttal evidence and admissible under the open-door rule.

*Standard of Review*

Appellate courts review the district court's performance of its gatekeeper role in its decision to admit or exclude testimony for abuse of discretion. See *State v. Aguirre*, 313 Kan. 189, 195-97, 485 P.3d 576 (2021). Moreover, the use and extent of rebuttal evidence rests in the sound discretion of the district court, and the ruling of the district court will not be reversed "unless it appears that discretion has been abused to the prejudice of the defendant." *State v. Miller*, 308 Kan. 1119, 1164, 427 P.3d 907 (2018). A judicial action equates to an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. 308 Kan. at 1164. Decaire argues the district court's

action was a mistake of law, as the proffered testimony did not implicate a statutory rule of exclusion.

*The district court did not abuse its discretion.*

We must note, at the outset, that Decaire does not appeal the district court's decision to admit the State's propensity evidence. Rather, he concedes that propensity evidence in a criminal action involving sex offenses is admissible under K.S.A. 2022 Supp. 60-455(d) and Kansas Supreme Court precedent. See *State v. Spear*, 297 Kan. 780, 787, 304 P.3d 1246 (2013); *State v. Prine*, 297 Kan. 460, 475-76, 303 P.3d 662 (2013). Decaire only argues that the district court's exclusion of his planned rebuttal testimony was an error of law because the court erroneously determined the proffered rebuttal evidence was inadmissible under K.S.A. 60-447(a).

The State initially argues Decaire failed to make a sufficient proffer of the excluded evidence under K.S.A. 60-405, which precludes appellate review of the issue. The State claims because Decaire did not ask the court to present Rauh's rebuttal testimony outside the presence of the jury to make a formal proffer and submitted no details regarding the basis of Rauh's potential testimony, we cannot now conduct a meaningful review of the district court's ruling. But as the State acknowledges, "no formal proffer is required," and "in-court dialogue may satisfy K.S.A. 60-405 depending on the circumstances." *State v. Swint*, 302 Kan. 326, 332-33, 352 P.3d 1014 (2015).

Here, the district court held a bench conference after Rauh's testimony began, and the prosecutor objected to this specific line of questioning by defense counsel. The district court heard the basis of the State's objection and asked defense counsel to respond. Defense counsel stated her intention was to have Rauh testify she had seen Decaire around children and had no cause for concern. Defense counsel also told the court Rauh would testify she observed children around Decaire and the children did not

6

act fearful or avoid him. Based on the information provided by defense counsel, sufficient information exists in the record for us to review the district court's ruling.

    *a.  The proffered evidence was not proper rebuttal evidence.*

As correctly recited by Decaire, propensity evidence is generally inadmissible under K.S.A. 2022 Supp. 60-455. In pertinent part, K.S.A. 2022 Supp. 60-455(a) states:

> "Subject to K.S.A. 60-447, . . . evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion."

But the Kansas Legislature amended the statute in 2009, adding a provision that admits such propensity evidence in a criminal sex offense case. K.S.A. 2022 Supp. 60-455(d) provides:

> "Except as provided in K.S.A. 60-445, and amendments thereto, in a criminal action in which the defendant is accused of a sex offense under articles 34, 35 or 36 of chapter 21 of the Kansas Statutes Annotated, prior to their repeal, or articles 54, 55 or 56 of chapter 21 of the Kansas Statutes Annotated, or K.S.A. 2022 Supp. 21-6104, 21-6325, 21-6326 or 21-6419 through 21-6422, and amendments thereto, evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative."

Although the statute limits the scope of the potential propensity evidence that may be admissible, first to specific offenses, it includes K.S.A. 2018 Supp. 21-5503 and K.S.A. 2018 Supp. 21-5506, the offenses for which Decaire was charged. Other limitations include that the evidence must be relevant and probative, and the district court must weigh its probative value against the prejudicial effect before admitting this kind of evidence. *State v. White*, 316 Kan. 208, 215, 514 P.3d 368 (2022). Here, the district court

found that the proposed evidence was relevant and material to the disputed fact that Decaire had the propensity to commit sex crimes like the crimes charged here.

Again, Decaire does not dispute the admission of the propensity evidence itself. He only reasons because the propensity evidence was admitted, he was entitled to a meaningful opportunity to rebut the evidence and establish that he did not have the propensity to commit similar crimes under his constitutional right to a fair trial and due process. Decaire claims his proffered evidence would have refuted the State's evidence that suggested Decaire's propensity to digitally penetrate children, and thus was proper rebuttal evidence. Decaire argues the defense counsel's intent was not to elicit Decaire's good character through Rauh's testimony, but to rebut the State's suggestion of his propensity to commit sexual misconduct.

Decaire contends the district court's reliance on *Price* to exclude Rauh's testimony resulted in a mistake of law. In *Price*, the defense attempted to ask a character witness, Price's former wife, how he acted around children, but the district court excluded her testimony after the State's objection. Our Supreme Court found the trial court properly excluded the evidence holding that "the provisions of K.S.A. 60-447(a) do not permit evidence of specific instances of conduct where a party offers evidence of a person's good character to prove his or her conduct was in accord with the person's character." 275 Kan. at 94. Decaire argues *Price* should not have been applied because it was decided six years before the amendment of K.S.A. 60-455(d) and only addressed whether a defendant has the right to introduce character evidence through K.S.A. 60-447(a); not whether rebuttal to propensity evidence under K.S.A. 60-455(d) was appropriate.

Decaire suggests this case is more like *State v. Davis*, 237 Kan. 155, 697 P.2d 1321 (1985). In *Davis*, our Supreme Court found that it was prejudicial to the defendant for the district court to exclude rebuttal testimony which did not relate to specific instances of conduct but put an accomplice's credibility in doubt and should have been

8

admitted under K.S.A. 60-420—allowing introduction of extrinsic evidence of conduct to attack a witness's credibility. 237 Kan. at 160. But we find *Davis* inapplicable here. First, *Davis* was a case about attacking the credibility of a witness, not a case in which K.S.A. 60-455 or K.S.A. 60-447(a) was applied. Also, unlike here, the defendant in *Davis* sought to admit testimony that directly rebutted the credibility of the accomplice's testimony—although the accomplice testified that he had never robbed anyone, the proffered rebuttal testimony was not offered to show specific instances where the accomplice did rob people, but to demonstrate the untruthfulness of his testimony. That is simply not the case here.

The evidence Decaire wishes to rebut was of his juvenile adjudication for rape, the facts of which were admitted by stipulation. Even if Rauh's testimony were admitted, it would not have directly rebutted Decaire's earlier juvenile adjudication. Instead, Decaire was asking Rauh to testify as to his observed conduct around her children and his children long after his earlier conviction—thus, specific instances of his appropriate conduct, not direct rebuttal.

Moreover, the later enactment of K.S.A. 2022 Supp. 60-455(d) does not render *Price* inapplicable. Both before and after the addition of subsection (d), K.S.A. 60-455 (and later K.S.A. 60-455[a]) specifically preface that the provision is subject to K.S.A. 60-447, so the district court's reference to the analysis of K.S.A. 60-447 in *Price* was correct. Indeed, K.S.A. 60-455(d) does not prohibit Decaire from directly rebutting the propensity evidence introduced, but Decaire's attempt to use Rauh's testimony as such rebuttal evidence was inadmissible because it would have violated K.S.A. 60-447(a). Rauh's testimony regarding Decaire's interactions with other children would have been evidence of specific instances of conduct to prove his good character, which is inadmissible under K.S.A. 60-447(a).

*b. The "open the door" rule does not apply.*

Decaire argues in the alternative that the rebuttal evidence should still have been permitted under the "'open the door'" rule. Decaire claims that because the State placed Decaire's propensity to digitally penetrate children at issue—thus, opening the door—by admitting his prior juvenile adjudications, he should have the right to rebut that evidence.

The State suggests we refuse to consider the issue because Decaire did not raise this argument before the district court. And even if the argument had been raised below, the State argues it still fails because the State did not open any doors by introducing inadmissible evidence.

We find the State's argument persuasive. Kansas courts have held that the "open the door" rule applies when the defendant opens an otherwise inadmissible area of evidence during the examination of witnesses, which then allows the prosecution to present evidence in that forbidden area. *State v. Everett*, 296 Kan. 1039, 1044, 297 P.3d 292 (2013). But Decaire provides no authority to support the idea that the "open the door" rule should apply when the prosecutor opens the door to an otherwise inadmissible area of the evidence. Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue. *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020).

More importantly, here the prosecution did not open the door to otherwise inadmissible evidence—it introduced evidence legally admissible under K.S.A. 2018 Supp. 60-455(d) through the stipulation of the parties.

Because the specific instance evidence was not permitted under K.S.A. 60-447(a), and Decaire's alternative argument that he should be permitted to admit rebuttal evidence

10

under the "open the door" rule is unpersuasive, we find that the district court did not abuse its discretion by excluding Decaire's proffered rebuttal evidence.

ANY PROSECUTORIAL ERROR IN CLOSING ARGUMENT WAS HARMLESS

Decaire next argues that the prosecutor erred during closing argument in two ways: first, by misstating the law through arguing the victims' statements corroborated each other; and second, by presenting argument designed to inflame the passions of the jurors.

*Standard of Review*

The appellate court uses a two-step process to evaluate claims of prosecutorial error:  error and prejudice. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

"To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citations omitted.]" *Sherman*, 305 Kan. at 109.

11

Even if the prosecutor's actions are egregious, reversal of a criminal conviction is not an appropriate sanction if the actions are determined to satisfy the constitutional harmlessness test. 305 Kan. at 114.

Decaire concedes he did not raise the issue of prosecutorial error before the trial court and so it is being raised for the first time on appeal. Yet appellate courts will review claims of prosecutorial error based on a prosecutor's comments made during voir dire, opening statement, or closing argument without a timely objection. But the court may use the presence or absence of an objection in its analysis of the alleged error. *State v. Butler*, 307 Kan. 831, 864, 416 P.3d 116 (2018).

Applying these principles, we address each of Decaire's prosecutorial error claims.

*Any error by the prosecutor suggesting corroboration did not change the outcome of the trial.*

First, Decaire maintains that the prosecutor erred by telling the jury that Victim 1 and Victim 2's testimonies corroborated each other. During the State's rebuttal in closing argument, the prosecutor stated, "This is where you get to use your common sense in deciding the credibility of what you've heard. I want to talk about some of the things that defense counsel has brought up. The children's stories corroborate each other. There is corroboration for what happened." Decaire argues that, through this statement, the prosecutor misstated the law by undermining the district court's jury instruction that each charge should be decided separately.

A prosecutor errs when his or her comments improperly undermine the State's burden of proof by misstating the law. *State v. Thomas*, 307 Kan. 733, 743, 415 P.3d 430 (2018). But prosecutors are generally afforded a wide latitude in crafting closing arguments to address the weaknesses of the defense. *State v. Watson*, 313 Kan. 170, 176,

484 P.3d 877 (2021). When determining whether the prosecutor's statement falls outside the wide latitude given to the prosecutor, we do not analyze the statement in isolation but must consider the context in which the statement was made. *State v. Ross*, 310 Kan. 216, 221, 445 P.3d 726 (2019).

In isolation, the first portion of the prosecutor's rebuttal argument—pointing out that the children's stories "corroborate" each other—could appear to infringe the multiple counts jury instruction, jury instruction No. 16, which instructed the jury to decide each charge separately on the evidence and law applicable to it, uninfluenced by any other charge. Even so, a full review of the record provides necessary context. Here, the prosecutor's comments being scrutinized were made in specific response to defense counsel's closing argument pointing out the lack of corroborating witnesses or medical evidence, suggesting the children fabricated the offenses, and proposing the victims were influenced by the adults around them.

In response to the defense, the prosecutor began her rebuttal by first stating she would address the points brought up by defense counsel. The prosecutor briefly mentioned there was witness corroboration and then went on to argue multiple other points to refute the defense theory that the children fabricated the incidents, such as the victims' testimony regarding other witnesses; the victims' relationship with Decaire and lack of motive; and the victims' young ages and lack of sexual knowledge necessary to fabricate such allegations. The prosecutor reviewed Decaire's prior crimes showing propensity and concluded her closing argument by asking the jury to consider the propensity evidence and the victims' testimony together as corroboration. The prosecutor was not appealing to the jury to find that the two victims' testimonies were, standing alone, enough corroboration to constitute the separate charges.

A prosecutor may point out a lack of evidence to support a defense or to corroborate a defendant's argument regarding holes in the State's case. *State v. Martinez*,

13

311 Kan. 919, 923, 468 P.3d 319 (2020). In fact, our Supreme Court has explained a prosecutor may also fairly comment on the believability of and the evidence underlying the defense theory. See *Butler*, 307 Kan. at 868. Here, the prosecutor was doing just that—attempting to point out deficiencies in the defense's theories.

Decaire relies on our Supreme Court's holding in *State v. Naputi*, 293 Kan. 55, 65, 260 P.3d 86 (2011), to support his argument that the prosecutor committed reversible error. In *Naputi*, the defendant claimed the prosecutor's statement during closing argument—that one victim's testimony corroborated five other victims' testimonies—improperly implied to the jury that it could find him guilty of aggravated indecent liberties with one victim because he committed similar acts to other children. Our Supreme Court held that such a statement in isolation does run afoul of the multiple counts jury instruction provided by the district court. 293 Kan. at 65. Yet the court reiterated that the prosecutor's comments must be viewed in context and found that the prosecutor's comment obviously intended to refute the defense's theory that the children conspired to falsify their claims and did not exceed the bounds of fair play. 293 Kan. at 65. The court did note the prosecutor's misuse of the word "corroborate," but ultimately found it not to be a "gross and flagrant misconduct or the product of ill will," and that where the jury was properly instructed to consider each count separately, such error did not affect the outcome of the trial. 293 Kan. at 65.

Decaire's reliance on *Naputi* is misplaced, as it actually supports the State's position. Like the prosecutor in *Naputi*, the prosecutor here commented that the two victims' testimonies corroborated each other to refute the defense's fabrication theory. But as described above, even if the prosecutor erred by using the word "corroborate," as the court found in *Naputi*, it is clear in the context of the rebuttal argument that here the prosecutor was refuting defense counsel's suggestion the offenses lacked corroboration. And although in *Naputi* our Supreme Court found use of the word "corroborate" to be

14

error, the court was also "firmly convinced" the error did not affect the outcome of Naputi's trial. 293 Kan. at 65.

Similarly, even if the prosecutor here erred by using the word "corroborate," we do not find the use of this single word to be flagrant misconduct considering the context of the arguments. And, in jury instruction No. 16, the district court clearly instructed Decaire's jury to consider each charge separately, uninfluenced by other charges. See *State v. Barber*, 302 Kan. 367, 383, 353 P.3d 1108 (2015) (in determining whether a prosecutorial error prejudiced the jury, appellate courts must consider the extent of any ameliorating effect of a jury admonition attempting to remedy any such error). We presume juries follow the instructions provided by the trial courts. *State v. Hillard*, 313 Kan. 830, 845, 491 P.3d 1223 (2021). So, like the court in *Naputi*, we are firmly convinced, beyond a reasonable doubt, that the prosecutor did not commit reversible error—that is, the comments did not affect the outcome of Decaire's trial.

*The prosecutor's inartful statement did not amount to reversible error.*

Decaire next claims the prosecutor erred by making comments intended to inflame the passions of the jury. Specifically, he argues the prosecutor's use of unnecessarily vulgar and crass language to describe Decaire's propensity to digitally penetrate his victims was outside the bounds of fair argument.

At issue are these comments by the prosecutor, comparing Decaire's current charges with his prior adjudications:

> "Every single time, if you read that [stipulation] over again, the facts of the case, before he would put his penis in that 13-year-old his fingers went in first. He has the propensity to do digital penetration. That corroborates what [Victim 1 and Victim 2] told you. How in the world would [the victims] know that when this guy was 17 years old he gets off on putting fingers in vaginas before? How would they know that fact?

15

"That's your corroboration, because that's what he had the propensity to do. He likes that. He likes digital penetration. A six-year-old and a seven-year-old report digital penetration. How in the world would they know that from his past unless that happened to them? There's your corroboration."

Decaire objects to the phrase "he gets off on" as an inappropriately vulgar depiction, and argues such language is used to suggest a negative connotation, like a person gains sexual gratification through unorthodox or illegal sexual kinks.

The State contends the prosecutor was accurately describing the existing evidence, showing that Decaire had in the past and present cases digitally penetrated his victims. The State acknowledges the prosecutor's language may not have been optimal but argues counsel was under no obligation to sanitize the evidence in her closing.

Although prosecutors have wide latitude in crafting their arguments and drawing reasonable inferences from the evidence, comments that misstate facts in evidence, inflame the prejudices of the jury, or improperly divert the jury's attention from the evidence are erroneous. See *State v. Lowery*, 308 Kan. 1183, 1208-09, 427 P.3d 865 (2018) (citing *State v. Tosh*, 278 Kan. 83, 90, 91 P.3d 1204 [2004], *overruled on other grounds by State v. Sherman*, 305 Kan. 88). Again, when determining whether the prosecutor's statement falls outside the wide latitude given to the prosecutor, we must consider the context in which the statement was made. *Ross*, 310 Kan. at 221.

Here, the prosecutor was again responding to defense counsel's closing which argued the State's case lacked corroboration. The prosecutor asked the jury to consider Decaire's past adjudications for rape of a 13-year-old girl who was a vulnerable runaway whom he used to babysit—not just a girl he met at a party, but someone he had cared for, like the victims in the current case. The prosecutor went on to compare Decaire's use of digital penetration in the prior adjudications to the claims of the victims in the current

16

case to corroborate their stories. The prosecutor did not misstate the facts, as the facts of the prior adjudication were stipulated by the parties, and trial testimony by each victim recounted digital penetration. So, then, we are left to decide whether the prosecutor's phrasing—"gets off"—improperly provoked a negative reaction from the jury.

Although this particular phrase has not been an apparent topic of prior court discussion, Decaire cites to several Kansas cases involving improper prosecutor's comments designed to inflame the passions of the jury. For example, in *State v. Henry*, 273 Kan. 608, 621, 44 P.3d 466 (2002), our Supreme Court found that prosecutor's remarks in closing argument about a mother's grief ("think about Mother's Day yesterday," how the victim's mother "must have felt") were not relevant, were improper, and clearly intended to inflame the passion and the prejudice of the jury. The *Henry* court held that the comments, along with the mother's trial testimony, substantially affected the defendant's right to a fair trial and amounted to prosecutorial misconduct. 273 Kan. at 641.

Decaire also cites *State v. Olsman*, 58 Kan. App. 2d 638, 658, 473 P.3d 937 (2020), where a panel of this court held that prosecutor's comments appealing to sympathy for the victim—using language like "slut-sullied" and "booty call"—were erroneous because the comments distracted the jury from its duty as a fact-finder. The panel found although the language was a rational inference based on the evidence, it had "little bearing on the charged offenses," because whether the defendant held the victim in low regard was irrelevant to whether he kidnapped and raped her. 58 Kan. App. 2d at 658-59.

Finally, Decaire analogizes his case to *State v. Maybin*, 27 Kan. App. 2d 189, 199, 2 P.3d 179 (2000), where this court found that the prosecutor's use of the word "predator" was designed to inflame the passion and prejudice of the jury and amounted to prosecutorial misconduct. But the *Maybin* court went on to find that because of the

17

amount and weight of the evidence the "'predator' remark was harmless and not enough to require reversal." 27 Kan. App. 2d at 200.

Here, we certainly find the use of the phrase "gets off" by the prosecutor was uncouth and no doubt beneath what we would consider the decorum of a court proceeding. That said, the improper language did not deviate from the evidence or attempt to elicit sympathy for the victims. Rather, the phrase was a rational—albeit overly colorful—inference from the evidence and did, in fact, bear on the charged offense, as it tended to show a pattern of conduct. And a prosecutor "may indulge in impassioned bursts of oratory and may use picturesque speech as long as he or she does not refer to facts not disclosed by the evidence." *State v. Rodriguez*, 269 Kan. 633, 643, 8 P.3d 712 (2000).

Even if we were to find the prosecutor's language erroneous, we must then determine whether the error prejudiced Decaire's due process rights to a fair trial. See *Sherman*, 305 Kan. at 109. Prosecutorial error is harmless if the State can demonstrate beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record, which is to say, there is no reasonable possibility that the error contributed to the verdict. *State v. Fraire*, 312 Kan. 786, 791-92, 481 P.3d 129 (2021).

Here, the prosecutor's inartful language suggested Decaire has a propensity to attain sexual gratification from digitally penetrating his victims' vaginas. That propensity was introduced as evidence through trial testimony and the prior adjudications were stipulated by both parties for the jury's consideration. Defense counsel acknowledged the explicit, shocking, and even "despicable" nature of the victim's allegations. And the prosecutor's inartful phrasing put no more emphasis on the evidence than her next, more appropriate statement, "He likes digital penetration." Despite the absence of physical evidence, other evidence against Decaire was strong, including that the victims disclosed the incidents independently, without knowledge of the other victim's abuse; and the lack

18

of motive for the victims or their families to lie, given the close relationships between them.

Applying the above principles and given the totality of the evidence presented during trial, we find that the prosecutor's error did not prejudice Decaire. As a result, we find the prosecutor's language during closing arguments was harmless.

SUFFICIENT EVIDENCE EXISTED TO CONVICT DECAIRE OF THE RAPE OF VICTIM 2

Decaire next argues that the State failed to meet its burden of proof to show he was guilty beyond a reasonable doubt on the two charges of rape of Victim 2, Counts 1 and 3 of his conviction.

*Standard of Review*

When reviewing a sufficiency of the evidence challenge, we "review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *Aguirre*, 313 Kan. at 209. We will not, though, reweigh evidence, decide any conflicts in the evidence, or determine the credibility of witnesses. 313 Kan. at 209.

The appellant bears a high burden to succeed on a sufficiency of the evidence claim, and "only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *Meggerson*, 312 Kan. at 247.

*Sufficient evidence supports Decaire's conviction of rape as to Victim 2.*

Decaire was charged with and convicted of two counts of rape, counts 1 and 3, under K.S.A. 2018 Supp. 21-5503(a)(3), (b)(2), which states: "Rape is: . . . sexual

intercourse with a child who is under 14 years of age . . . when the offender is 18 years of age or older." The jury instruction provided by the district court for Counts 1 and 3 outlined the proof required to establish the charges:

> "1.  Clinton Decaire engaged in sexual intercourse with [Victim 2].
> "2.  At the time the sexual intercourse occurred, [Victim 2] was less than 14 years old. The State need not prove Clinton Decaire knew the child's age.
> "3.  At the time the sexual intercourse occurred, Clinton Decaire was 18 or more years old.
> "4.  This act occurred on or between the 19th day of April, 2019[,] and the 27th day of April, 2019, in Sedgwick County, Kansas.
> "'Sexual intercourse' means any penetration of the female sex organ by a finger. Any penetration, however slight, is sufficient to constitute sexual intercourse."

Decaire argues that the State failed to present sufficient evidence to prove beyond a reasonable doubt that he committed the rape of Victim 2 because of one element he found lacking:  she failed to identify Decaire in court as the assailant. Because his identity as the person who allegedly engaged in sexual intercourse with Victim 2 was an element of the crime, he contends the State was unable to prove this element since Victim 2 was both unable to identify him in court and only addressed Decaire by his nickname, Chevy. Decaire also claims that the other witnesses' testimony failing to corroborate Victim 2's testimony compounded the deficiency of identification.

On review of Victim 2's trial testimony, it is true she testified that she did not see Chevy in the courtroom. One detail Decaire ignores is that, during trial, Decaire and others were apparently wearing masks, given that the trial occurred in September 2021 while the COVID-19 pandemic was ongoing. Later, during closing arguments, the prosecutor "own[ed]" her mistake in not asking everyone to remove their masks while Victim 2 testified. Regardless of the failure to identify Decaire in court, Victim 2 clearly and repeatedly identified her assailant by his nickname, "Chevy"; identified the house he

20

lived in; and identified her abuser by testifying Chevy "was [her] friend's stepdad." Victim 2 also testified multiple times that Chevy was the man who molested her twice, once while she was sitting on his lap and once while she was sleeping over at Chevy's and her friend's house. Earlier in trial testimony, Decaire's former girlfriend both identified Decaire as the defendant on trial and explained he also went by the nickname Chevy. Also, multiple other witnesses, including Victim 2's mother, a police officer, Decaire's father, and defense witness Rauh testified at trial that Decaire went by the nickname Chevy rather than Clinton.

Although this evidence is all circumstantial, a verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. *State v. Colson*, 312 Kan. 739, 750, 480 P.3d 167 (2021). And a conviction of even the gravest offense can be based entirely on circumstantial evidence. *State v. Pattillo*, 311 Kan. 995, 1003, 469 P.3d 1250 (2020). There is no legal distinction between direct and circumstantial evidence in terms of their respective probative value. *Aguirre*, 313 Kan. at 209.

The State argues an in-court identification of the defendant is unnecessary if the evidence permits an inference that the person who committed the charged crimes is the person who is on trial, citing *City of Arkansas City v. Sybrant*, 44 Kan. App. 2d 891, 900, 241 P.3d 581 (2010), and *In re B.A.M.*, 24 Kan. App. 2d 402, Syl. ¶ 1, 945 P.2d 420 (1997). Both *Sybrant* and *In re B.A.M.* were cases initiated by a traffic stop and the police officers in each case only identified the defendants by name when testifying at trial, not by explicit in-court identification. In *Sybrant*, at trial the district court identified the defendant as Sybrant, the citing officer confirmed the driver was Sybrant, and Sybrant even confirmed his identity as the driver of the subject vehicle. In *In re B.A.M.*, the court found enough circumstantial evidence to infer B.A.M.'s identity. During the police stop, B.A.M. identified himself as B.A.M., and the officer spent 45 minutes confirming B.A.M.'s name, address, driver's license number, and physical description. In both cases,

21

the courts found no caselaw requiring an in-court identification, at least where the evidence supports an inference of sufficient identification. *Sybrant*, 44 Kan. App. 2d at 900; *In re B.A.M.*, 24 Kan. App. 2d at 403.

Decaire reasons these cases are distinguishable because there, the State did not ask the sole witnesses to identify the defendant in court, and in each case, the officers identified the defendants by name, where here Victim 2 did not call Decaire by his legal name. But here, Victim 2 was likewise not the sole witness, and the evidence recited above was more than sufficient to provide the jury a reasonable basis on which to infer Decaire's identity, despite the use of a nickname.

Reviewing the record in the light most favorable to the State, based on the testimonies of multiple witnesses, the State presented sufficient evidence for the rational fact-finder to draw a reasonable inference, beyond a reasonable doubt, that Chevy and Decaire are the same person, and Decaire was the person who abused Victim 2. We find sufficient evidence, even if circumstantial, supported Decaire's convictions on Counts 1 and 3.

CUMULATIVE ERRORS DID NOT DEPRIVE DECAIRE OF A FAIR TRIAL

Decaire claims all of the district court's and prosecution's alleged errors cumulatively denied him a fair trial. Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. *State v. Hirsh*, 310 Kan. 321, 345, 446 P.3d 472 (2019).

In assessing the cumulative effect of errors during the trial, appellate courts examine the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their

interrelationship, if any; and the overall strength of the evidence. *Hirsh*, 310 Kan. at 345-46. If any of the errors being aggregated are constitutional in nature, their cumulative effect must be harmless beyond a reasonable doubt. *State v. Robinson*, 306 Kan. 1012, 1034, 399 P.3d 194 (2017). However, when an appellate court finds no errors exist, the cumulative error doctrine cannot apply. *State v. Lemmie*, 311 Kan. 439, 455, 462 P.3d 161 (2020). Even a single error cannot support reversal under the cumulative error doctrine. *State v. Ballou*, 310 Kan. 591, 617, 448 P.3d 479 (2019); see also *Butler*, 307 Kan. at 868 (citing both no error and single error rules).

Here, Decaire has failed to show that the district court abused its discretion by denying defense's rebuttal evidence. And, even if we assume the prosecutor committed error during closing argument, it did not impact the outcome of the trial; thus, any error was harmless. See *Sherman*, 305 Kan. at 109. Furthermore, Decaire has failed to show that there was insufficient evidence to support his conviction.

Given the nature and relationship of the alleged errors, the context in which they occurred, and the considerable evidence against Decaire presented during trial, the State met its burden of showing beyond a reasonable doubt there was no reasonable possibility that any errors contributed to the verdict. As a result, we find that cumulative error did not deny Decaire a fair trial. See *State v. Walker*, 304 Kan. 441, 458, 372 P.3d 1147 (2016); *State v. Williams*, 308 Kan. 1439, 1462-63, 430 P.3d 448 (2018).

THE DISTRICT COURT ABUSED ITS DISCRETION WHEN ESTABLISHING A RESTITUTION AMOUNT THAT LACKED SUPPORTING EVIDENCE

Decaire's final argument on appeal is that the district court abused its discretion when determining his restitution amount because the order was not supported by substantial competent evidence. The State maintains the district court decision was

supported by substantial competent evidence, and in the alternative, because Decaire was not entitled to an evidentiary hearing, the court did not abuse its discretion.

In the presentence investigation report prepared prior to sentencing, the total amount of restitution due was listed as: "To be determined," and identified Victim 1, Victim 2, and the "Children's Advocacy Center Fund" as the victims to whom restitution was owed. At the sentencing hearing, the prosecutor announced there was a restitution request from the Kansas Crime Victims' Compensation Board (Board) in the amount of $2,300, which the prosecutor stated was the amount paid to Victim 2's mother for costs associated with moving away from the neighborhood where they lived near the Decaire family and costs of Victim 2's therapy. The district court noted it had "two reports from the [Board]. The second [report read $2,330]."

At that point, the prosecutor stated, "I have just [$2,300]. I don't know where the other 30 came from, Judge." The district court responded, "It says October 22nd, Resolutions Individual, Couple and Family Therapy, outpatient counseling." The prosecution asked the court to order the full amount, and when asked for a response, defense counsel only responded, "Mr. Decaire would object to the ordering of restitution in this case." The court then explained, "The statute is pretty clear when there is a situation in which there's monies expended by victims or on behalf of victims that we have a strong bent towards restitution," and ordered Decaire to pay $2,330 to the Board, payable immediately.

*Standard of Review*

A district court "shall order a defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime." K.S.A. 2022 Supp. 21-6604(b)(1). We review the "'amount of restitution and the manner in which it is made to the aggrieved party'" for abuse of discretion. *State v. Martin*, 308 Kan. 1343, 1349, 429

24

P.3d 896 (2018). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact, i.e., if substantial competent evidence does not support the court's factual finding. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023); *State v. Hall,* 297 Kan. 709, 711, 304 P.3d 677 (2013).

*The restitution order was not supported by substantial competent evidence.*

Decaire's initial restitution argument may be quickly dispensed with. First, Decaire mistakenly argues he was absolutely entitled to an evidentiary hearing under K.S.A. 2018 Supp. 22-3424(d). Procedurally, the imposition of restitution is authorized by K.S.A. 2018 Supp. 22-3424(d)(1), which states:

> "If the verdict or finding is guilty, *upon request of the victim or the victim's family* and before imposing sentence, the court *shall hold a hearing to establish restitution*. The defendant may waive the right to the hearing and accept the amount of restitution as established by the court. If the court orders restitution to be paid to the victim or the victim's family, the order shall be enforced as a judgment of restitution pursuant to K.S.A. 60-4301 through 60-4304, and amendments thereto." (Emphases added.)

Yet, this statute's imperative "shall hold a hearing" is limited, and our Supreme Court has found that the provision only pertains to situations in which the crime victim or victim's family requests restitution. *State v. McDaniel*, 292 Kan. 443, 446, 254 P.3d 534 (2011) (holding that restitution paid to Medicaid for the victim's medical expenses does not invoke evidentiary hearing under K.S.A. 22-3424). Furthermore, the *McDaniel* court held that the "shall" language of the statute is directory and not mandatory. 292 Kan. at 447. Here, neither the victims nor their families sought restitution; rather, it was the Board that requested restitution, much as Medicaid sought restitution in *McDaniel*. So,

Decaire's reliance on K.S.A. 2018 Supp. 22-3424 to support his argument is wrongfully placed.

The Kansas statute governing criminal restitution is K.S.A. 2022 Supp. 21-6604(b)(1), which states that a district court "shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime."

The appropriate amount of restitution is that which compensates the victim for the actual damage or loss caused by the defendant's crime. An accurate measure of this loss depends on the evidence before the district court. *State v. Hall*, 297 Kan. 709, 713-14, 304 P.3d 677 (2013). Provided "the requisite causal connection exists, and '"the [district] court's determination of restitution [is] based on reliable evidence"' that '"yields a defensible restitution figure,"'" the district court's discretionary determination of restitution amount will be upheld. 297 Kan. at 714. Though the district court has discretion to determine the amount of restitution, substantial competent evidence must support every restitution award. See *State v. Arnett*, 307 Kan. 648, 653, 413 P.3d 787 (2018). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021).

Decaire contends that because no evidentiary hearing was conducted, which again was not mandatory, no evidence was presented and as such, the district court's restitution determination was not supported by substantial competent evidence. He argues the prosecution's statement alone, that the restitution to the Board is to reimburse Victim 2's and her mother's relocation and therapy costs, was not sufficient evidence to satisfy the State's burden.

Typically, the State bears the burden of presenting sufficient evidence to prove the restitution amount. See *State v. Cox*, 30 Kan. App. 2d 407, Syl. ¶ 1, 42 P.3d 182 (2002). Here, we question what evidence was provided, both to the State and the district court. On review of the record and sentencing transcript, the State neither filed any request nor sought to admit into evidence the two reports from the Board, upon which the district court relied during the sentencing hearing, and the statements are absent from the record on appeal. In fact, the sentencing transcript also shows the prosecutor was uncertain about the precise amount requested for restitution and did not even possess the second report by the Board. The record does not indicate whether defense counsel was provided a copy of either Board report, and no other testimony or evidence was presented to support the computation of the restitution during the sentencing hearing.

The State argues that evidence in the record supports the district's restitution determination, citing to this court's holding in *State v. Khamvongsa*, No. 111,780, 2015 WL 7434698, at *1-2 (Kan. App. 2015) (unpublished opinion) for support. There, the State provided the district court documentation of the burial and funeral costs supporting the amount requested for restitution to the victim's family. Defense counsel objected that he was only just presented documentation at the hearing, and vaguely stated that he did not object to the numbers but was contesting if funeral expenses were an appropriate form of restitution. This court found substantial competent evidence supported the district's court restitution determination and upheld the court's ruling. Finding that the district court did not abuse its discretion, this court raised questions why the defendant did not object to the numbers or request an evidentiary hearing on the reasonableness of the restitution requested.

We find *Khamvongsa* to be distinguishable on its facts. Here, the record reflects that no documentation was presented to both counsels or entered into evidence regarding the computation of the restitution amount. Also, unlike in *Khamvongsa*, Decaire objected to the restitution order, albeit failing to articulate the reason for the objection in detail.

And there was clear confusion as to the amount of restitution requested, as the State requested $2,300 but the district court later amended that amount by referencing a second report from the Board—a report of which the prosecutor appeared unaware, stating, "I don't know where the other 30 came from, Judge." Despite this confusion and apparent lack of evidence, the district court nevertheless imposed restitution in the amount of $2,330.

The district court did not hold an evidentiary hearing, so the court must have made its finding solely on the evidence admitted into the record. This court has held that mere statements of counsel are not evidence, and a district court abuses its discretion by basing the amount of restitution solely on statements by the prosecutor. *State v. Cole*, 37 Kan. App. 2d 633, 636-37, 155 P.3d 739 (2007) (citing *State v. Reser*, 244 Kan. 306, 316, 767 P.2d 1277 [1989]). Restitution must be based on reliable evidence yielding a defensible restitution amount. *Cole*, 37 Kan. App. 2d. at 636 (citing *Hunziker*, 274 Kan. 655, Syl. ¶ 3, 56 P.3d 202 [2002]). And because the record lacks any supporting evidentiary documents, it leaves us unable to conduct a meaningful review of whether the amount is defensible.

We find that the district court abused its discretion in ordering restitution in the amount of $2,330 without a more thorough review and exchange of evidence to support the award. We therefore vacate the restitution order and remand for the district court to hold an evidentiary hearing to determine whether the amount of restitution was proper. See *State v. Kraft*, No. 117,658, 2018 WL 1884045, at *7 (Kan. App. 2018) (unpublished opinion) (vacating restitution order and remanding for a new hearing because "[this court does] not believe that we can properly assess whether the district court's restitution order should be upheld based on the record before us").

Convictions affirmed, sentence vacated in part, and case remanded with directions.